# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| FLOYD YOUNGER, JR., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CAROLYN W. COLVIN, acting )<br>Commissioner Social Security )<br>Administration, )<br>)<br>Defendant. ) | Case No. CIV-15-752-SM |

## MEMORANDUM OPINION AND ORDER

Floyd Younger Jr. (Plaintiff) brings this action for judicial review of the Defendant Acting Commissioner of Social Security's (Commissioner) final decision that he was not "disabled" under the terms of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). United States District Judge Timothy D. DeGiusti referred the matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3) and Fed. R. Civ. P. 72(b). Doc. 5. The parties then consented to having the undersigned conduct all further proceedings, including the entry of a final judgment. Doc. 13. Following a careful review of the parties' briefs, the administrative record (AR), and the relevant authority, the undersigned affirms the Commissioner's decision.

I.  **Administrative proceedings.**

Plaintiff applied for supplemental security income payments, alleging his impairments became disabling in July 2005, a date he later amended to April 2012. AR 157, 34. The Social Security Administration (SSA) initially and on reconsideration denied Plaintiff's claim. *Id.* at 79-82, 94-96. At Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing. *Id.* at 97-99, 28-78. The ALJ found Plaintiff "has not been under a disability" since the date he filed his application and denied him benefits. *Id.* at 23. The SSA Appeals Council declined Plaintiff's request for review; Plaintiff now seeks review of the Commissioner's final decision. *Id.* at 1-6; Doc. 1.

II. **Disability determination.**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920; *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps). Under this sequential procedure, Plaintiff bears the initial burden of proving he has one or more severe impairments. *See* 20

C.F.R. § 416.920; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If he succeeds, the ALJ conducts a residual functional capacity (RFC) assessment at step four to determine what Plaintiff can still do despite his impairments. See 20 C.F.R. § 416.920(a)(4)(iv); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1048 (10th Cir. 1993). Then, if Plaintiff shows he can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a job exists in the national economy. See *Turner*, 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

### III. The ALJ's findings.

Following the familiar five-step inquiry, the ALJ found Plaintiff had not engaged in substantial gainful activity since April 2012, the application date. AR 17. The ALJ then determined Plaintiff "has the following severe impairments: coronary artery disease status post quadruple bypass surgery, hypertension, degenerative disc disease of the lumbar spine, headaches, and left arm pain." *Id.* After concluding these impairments alone or combined do not meet or medically equal a listed impairment, the ALJ assessed Plaintiff's RFC. The ALJ concluded:

> [Plaintiff] can lift and carry 10 pounds frequently and 20 pounds occasionally. He can stand and walk 6 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday with normal breaks. He can only occasionally climb, bend, stoop, squat, kneel,

3

crouch, crawl, and push/pull with the left upper extremity. He has a slight limitation in finger, feel and grip, especially for the left arm but using if for both. He should avoid temperature extremes and avoid sun exposure.

He is afflicted with symptomatology from a variety of sources that produces mild to moderate chronic pain, which is of sufficient severity to be noticeable to him at all times, but nonetheless he should be able to remain attentive and responsive in a work setting and can carry out work assignments satisfactorily. He takes medication for the relief of the symptomatology, medications do not preclude him from functioning at the sedentary and light level as restricted and he would remain reasonably alert to perform required functions in the work setting. He will find it necessary to alter position from time to time to relieve the symptomatology.

*Id.* at 17-18. After he determined Plaintiff could not perform his past relevant work, the ALJ found Plaintiff could perform the following occupations: fast food worker, garment sorter, basket filler, order clerk, surveillance system monitor, and polisher, each of which exists in significant numbers in the national economy. *Id.* at 22-23. The ALJ concluded Plaintiff was not disabled. *Id.* at 23.

## IV. Discussion.

### A. Standard for review.

The court reviews the Commissioner's final "decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014) (citation omitted); *see Wilson v. Astrue*, 602 F.3d

1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations and internal quotation marks omitted). In reviewing the ALJ's opinion, "common sense, not technical perfection, is [the court's] guide." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

### B. Claimed errors.

Plaintiff contends the ALJ failed to (1) properly evaluate the medical source evidence; and (2) perform a proper credibility determination. Doc. 16, at 2.

#### 1. Evaluation of the medical source evidence.

Plaintiff challenges the weight the ALJ afforded to various medical sources and his evaluation of them.

##### a. Treating physician.

First, Plaintiff contends the ALJ "refused to mention" Plaintiff's treating physician opinion, "much less weigh" it under the treating physician's rule. Doc. 16, at 4. Plaintiff refers to the treatment notes from a

June 6, 2012 office visit following his April 2012 open-heart surgery. AR 415-18. In his Reply Brief, Plaintiff withdrew this argument.[1]  Doc. 21, at 2.

### b. Consultative examination.

Next, Plaintiff assails the ALJ's evaluation of Dr. S. Krishnamurthi's opinions. The ALJ ordered Dr. Krishnamurthi's examination plus an electrocardiogram, echocardiogram, and x-rays of the lumbosacral spine after the hearing. AR 75, 501-13.

The ALJ found:

> On September 17, 2013, Subramaniam Krishnamurthi, M.D., completed a medical source statement based on his findings during a consultative examination (18F). Dr. Krishnamurthi opined the claimant could lift and carry 10 pounds frequently and 20 pounds occasionally. He could stand and walk 2 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday. The undersigned affords some weight to Dr. Krishnamurthi in regards to the claimant's ability to lift, carry and sit. However, the undersigned affords little weight to Dr. Krishnamurthi in regards to the claimant's ability to only stand and walk for 2 hours in an 8-hour workday. This is not supported by findings upon Dr. Krishnamurthi's examination, as it was noted the claimant had full range of motion of hip joints and the lumbosacral spine. Further, it was noted the claimant had 5/5 strength in the lower extremities and he walked with a normal gait without use of an assistive device (18F). Given this evidence in conjunction with lumbar X-ray findings that revealed only

---

[1] It remains noteworthy the ALJ considered Dr. Muhammad's notes indicating Plaintiff was "doing well since discharge," he should continue his current medication, and "[r]ecommmend[ed] healthy lifestyle changes: including exercise, diet, and weight loss." *Id.* at 417. And the ALJ clearly considered this follow-up exam. *Id.* at 19.

> mild spondylosis (15F), the undersigned finds the claimant can stand and walk 6 hours in an 8-hour workday.

*Id.* at 21.

"The record supports the ALJ's evaluation of this evidence." *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) ("[T]he ALJ considered all of [the relevant medical source] evidence, as well as the record as a whole, and gave good reasons for the weight he afforded [those] opinions."). The ALJ looked to the medical evidence of record. A spine X-ray showed "no acute findings," and only "mild spondylosis," which contradicted Dr. Krishnamurthi's walking and standing limitations. AR 491. The undersigned agrees "[t]he ALJ did not substitute his judgment for that of Dr. [Krishnamurthi] or ignore Dr. [Krishnamurthi's] findings. Rather, the ALJ considered all of Dr. [Krishnamurthi's] medical evidence, as well as the record as a whole, and gave good reasons for the weight he afforded Dr. [Krishnamurthi's] opinions." *Vigil*, 805 F.3d at 1201.

### c. State agency medical consultants.

The ALJ further noted that the state agency medical consultants found Plaintiff could perform light work, giving this opinion "some weight" and noting "their opinion is consistent with treatment records, X-rays and findings upon consultative examinations . . . ." AR 21. The ALJ rejected the opinion in part because the ALJ determined Plaintiff's subjective complaints

7

required some further limitations. *Id.* So, the RFC assessment included a variety of additional limitations. *Id*. at 17-18. Substantial evidence supports the ALJ's assessment of the medical source evidence.

### 2. Credibility determination.

Next, Plaintiff challenges the ALJ's credibility determination. "Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence in the record, provided the determinations are closely and affirmatively linked to [that] evidence." *Adams ex rel. D.J.W. v. Astrue*, 659 F.3d 1297, 1302 (10th Cir. 2011) (internal quotation marks and citation omitted). An ALJ must consider (1) whether the objective medical evidence establishes a pain-producing impairment; (2) if so, whether there is at least a "loose nexus" between the impairment and the claimant's subjective complaints of pain; and (3) if so, whether, considering all of the evidence, both objective and subjective, the claimant's pain is in fact disabling. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)). "A claimant's subjective allegation of pain is not sufficient in itself to establish disability." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993). An ALJ's assessment of a

claimant's credibility will "not be upset if supported by substantial evidence." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001).

In assessing the credibility of pain testimony, various factors are relevant, including:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Branum v. Barnhart*, 385 F.3d 1268, 1273-74 (10th Cir. 2004) (quotation omitted).

Here, the ALJ summarized Plaintiff's testimony:

> At the hearing, the claimant testified substantially as follows: He stopped working because he was having problems with his back. He can no longer work because of his heart, back and legs. It is hard to breath[e] and he gets headaches in the mornings before he takes his medications. He takes an aspirin every morning which takes the headache away. When he exhausts himself, he feels a sharp pains his left upper arm. Sometimes his fingers will go numb and at times travels down his back. He carries nitroglycerine but has not gotten his refill yet. He has no trouble reaching with his arms but sometimes cannot get a good grip with his left hand. He has trouble breathing if he walks 20 to 30 minutes. His chest starts hurting and he has to stop and catch his breath. He has no problems with dust, fumes or gases when trying to breathe. He gets sharp pains in his lower back and had surgery on it about

20 years ago. He used to wear a brace but lost it. No current surgery has been recommended. He can bend and touch his knees but it is hard to get back up from touching his toes. He cannot squat and rise back up. He can walk up and down a flight of stairs but not at a steady pace. He cannot pick up a 10 pound bag of sugar because of back pain. He can stand for 20 minutes and walk about one to two blocks. He has no problems operating foot controls while driving. His back starts hurting when it rains. Being out in the sun and heat drains him. He has a history of quadruple bypass heart surgery and was in the emergency room the last week or two for chest pain. The last time he used marijuana was a week ago. He vacuums every once in a while and does laundry. It takes him all day to cut the grass with a push mower. He spends about 60 percent of the day off from his feet.

AR 18-19.

The ALJ encapsulated his credibility findings, concluding "the claimant's statements concerning the intensity, persistence and limiting effects of his impairments are not credible to the extent they are inconsistent with the above evidence of record." *Id*. at 20. The ALJ discounted Plaintiff's description of the severity and disabling effect of his symptoms based on the lack of medical evidence to support his reported symptoms and discrepancies between his statements, function reports, and the medical evidence. *Id*. at 18, 19.

Contrary to Plaintiff's assertions otherwise, the ALJ cited specific medical evidence and explained why it supported his credibility findings. For

example, regarding his chest pains and left arm pains, when discharged from the hospital following quadruple bypass surgery, he had an "ejection fraction of 50 to 55 percent and only mild left ventricular hypertrophy." *Id.* at 19. His reported May 7, 2012 pain was "different" from his preoperative angina pain. *Id.* His June 6, 2012 follow-up appointment showed improvement and no symptoms of recurrent angina or congestive heart failure. *Id.*; *id.* at 415-17. In addition, Plaintiff "denied any recurrence of severe exertional chest pain or other types of chest pain since discharge." *Id.* at 19, 472, 488. This contradicts Plaintiff's testimony. In addition, Plaintiff denied any heat or cold intolerance, again, contradicting his hearing testimony. *Id.* at 19, 416. And, the ALJ discredited Plaintiff's testimony regarding the severity of his back pain because of similar inconsistencies in the medical record. *Id.* at 20, 416, 452, 502.

The ALJ similarly relied on medical evidence to contradict Plaintiff's claim of shortness of breath and headaches. *Id.* at 19, 442, 472, 490. He did the same to counter some of Plaintiff's self-described limitations on his daily activities. *Id.* at 19, 178-94, 210-17, 220-27. The ALJ also considered Plaintiff's sporadic work history when evaluating his credibility. *Id.* at 20. This is undoubtedly a relevant consideration. *See Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) (noting that "[t]he ALJ can weigh and evaluate

11

numerous factors in determining the credibility of pain testimony," including "subjective measures of credibility that are peculiarly within the judgment of the ALJ" as well as "the motivation of . . . the claimant").

The ALJ also gave some credit to Plaintiff's subjective complaints. As noted, the State agency experts did not sufficiently account for these, and the RFC assessment incorporated some of these complaints: it included (1) limitations to occasionally climbing, bending, stooping, squatting, kneeling, crouching, crawling, and push/pull with the left upper extremity; (2) slight limitation in finger, feel and grip, and (3) avoidance of temperature extremes and sun exposure. AR 17.

The ALJ also noted medical management and medication compliance could properly manage Plaintiff's hypertension. *Id.* at 19. Contrary to Plaintiff's suggestion he could not afford his medication, the record reflects Plaintiff received them. *Id.* at 438. The undersigned concludes "the ALJ closely and affirmatively linked his credibility finding to substantial evidence, and therefore . . . will not disturb it." *Shockley v. Colvin*, 564 F. App'x 935, 942 (10th Cir. 2014).

The undersigned agrees with the Commissioner that Plaintiff's remaining arguments, to the extent they constitute developed arguments, present at best, harmless error. These include the ALJ's misattribution of a

function report to Plaintiff rather than that of Plaintiff's friend. Doc. 16, at 9 (citing AR 19, 220-27). Such error is harmless.

Similarly, the ALJ's non-acknowledgment of the agency clerk's observations regarding Plaintiff's forgetfulness is at most, harmless error, because Plaintiff points to no substantive evidence suggesting the ALJ should include mental limitations in the RFC assessment. *Id.* (citing AR at 159, 181, 184, 210, 215, 416, 434); *Alvev v. Colvin*, 536 F. App'x 792, 795 (10th Cir. 2013) (holding any error was harmless "[b]ecause the evidence in this case does not support assessing any functional limitations from mental impairments"). Plaintiff relies on his adult function reports, which the ALJ specifically considered in his credibility analysis. AR 19. And, the ALJ considered the entire record in making the RFC assessment. *Id.* at 17; *see Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (When "the ALJ indicates he has considered all the evidence our practice is to take the ALJ at his word." (brackets and internal quotation marks omitted)); *Thompson v. Colvin*, No. CIV-14-1184-HE, 2015 WL 7313878, at *2 (W.D. Okla. Nov. 20, 2015) (unpublished order) (finding harmless error where the ALJ's "fail[ed] to expressly consider the notation in the record regarding the state agency clerk's telephone interview with plaintiff").

## V. Conclusion.

The court AFFIRMS the Commissioner's decision.

ENTERED this 29th day of April, 2016.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE